**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| EUGENE JAEGER, | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Civil Action No.: RDB-15-2632 |
| | * | |
| INTERNATIONAL RENAISSANCE | | |
| FESTIVALS, LTD., d/b/a | * | |
| MARYLAND RENAISSANCE FESTIVAL | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Eugene Jaeger ("Jaeger" or "plaintiff") has filed a one-count Amended Complaint against defendant International Renaissance Festivals, d/b/a Maryland Renaissance Festival ("IRF" or "defendant") based on injuries he sustained at the 2012 Maryland Renaissance Festival (the "Festival") when he slipped and fell on an accumulated, slippery patch in a public area of the Festival premises. (ECF No. 10.) Plaintiff alleges that IRF was negligent in the maintenance of its property and that IRF failed to warn plaintiff of a dangerous condition on its property. (*Id.*)

Now pending before this Court is defendant IRF's Motion for Summary Judgment ("Defendant's Motion"). (ECF No. 20.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendant's Motion is GRANTED, Summary Judgment is ENTERED in favor of defendant, and this case shall be CLOSED.

## BACKGROUND

In ruling on a Motion for Summary Judgment, this Court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiff Eugene Jaeger operates the Unicorn Strings Music Company ("Unicorn Strings") and sells his wares at renaissance festivals, music festivals, arts shows, and by internet and phone. (ECF No. 20-1 at ¶¶ 1-2; ECF No. 22 at ¶¶ 1-2.)[1] Unicorn Strings began participating in the Maryland Renaissance Festival in 2003 or 2004, and, on December 22, 2011, signed the Festival's 2012 Craft Vendor Lease Agreement (the "Vendor Lease") in order to participate as a vendor in the 2012 Festival. (*Id.* at ¶¶ 3, 6.) The Vendor Lease covered a period of several days, including September 9, 2012, the day when plaintiff slipped, fell, and sustained injuries. (*Id.* at ¶¶ 7-8, 15-16.)

At approximately 10:30 a.m. on September 9, 2012, Jaeger walked from the Unicorn Strings vendor booth to the Festival restroom facilities. (ECF No. 20-1 at ¶ 13.) To reach the restroom, plaintiff walked on a gravel walkway and on the Festival's boardwalk. (*Id.* at ¶ 12.) After using the restroom, plaintiff started walking back along the boardwalk towards his booth. (*Id.* at ¶ 14.) While walking on the boardwalk, plaintiff stepped onto a patch of a slippery substance, which, he asserts, caused him to slip and fall down hard on his posterior and sustained physical injuries. (*Id.* at ¶ 15-16.) Defendants argue that the slippery substance was mud which had accrued there from the surrounding, wooded environment.

---

[1] As the paragraph numbers in plaintiff's statement of undisputed material facts correspond with those in defendant's statement of facts, reference will be made to defendant's statement of facts only, except where otherwise noted. *Compare* ECF No. 20-1 and ECF No. 22.

(ECF No. 20-1 at ¶¶ 18, 29, 33.)  Plaintiff argues that the slippery substance consisted of a dust and gravel mixture which became slippery after mixing with rain which had fallen the night before.  (ECF No. 22 at ¶¶ 18, 20.)  Neither plaintiff nor defendant knows exactly when the slippery substance accrued on the boardwalk, though both parties were aware that it had rained the night before.  (ECF No. 20-1 at ¶¶ 20-21; ECF No. 22 at ¶ 20-21.)

The Festival is an outdoor event held in a wooded setting.  (ECF No. 20-1 at ¶ 23.) The boardwalk where plaintiff slipped is located at the bottom of a hill and stops the hill's downhill progression.  (*Id.* at ¶ 24.)  There is a gravel walkway between the boardwalk and plaintiff's booth.  (*Id.* at ¶ 25.)  The area behind the booths is wooded, and trees stand directly adjacent to the booths and boardwalk.  (*Id.* at ¶¶ 26, 29.)

Plaintiff described the boardwalk on the day that he slipped as "not dangerous or suspicious," and dependable for walking.  (ECF No. 20-1 at ¶¶ 31-32.)  Plaintiff further described the specific spot on which he slipped as "innocuous" and "camouflaged."  (*Id.* at ¶ 33.)  Notwithstanding, plaintiff alleges that IRF breached its duty of care (1) in its construction, maintenance, and/or inspection of the walkway and (2) in failing to warn plaintiff of the slippery condition on the boardwalk.  (*Id.* at ¶ 34.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50.  On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations

omitted).

## DISCUSSION

IRF raises two arguments in support of its Motion for Summary Judgment. First, IRF argues that the Vendor Lease's Waiver Clause expressly releases IRF from all liability. (ECF No. 20-1 at 8-14.) Second, IRF asserts that it is entitled to summary judgment because plaintiff has produced no evidence that IRF had actual or constructive knowledge of the slippery patch, as required under Maryland premises liability law. (*Id.* at 14-17.)

In opposition, Jaeger first asserts that the release in the Vendor Lease does not apply to his claims, both based on the circumstances surrounding his slip and fall and based on a preceding clause in the contract. (ECF No. 21 at 8-11.) Jaeger further asserts that whether defendant had knowledge of the slippery condition is a disputed issue of material fact. (*Id.* at 13-14.)

### A. The Vendor Lease's Waiver Clause is Void, and IRF May Not Avoid Liability Through the Waiver Clause

"In Maryland, unambiguous exculpatory clauses are generally held to be valid in the absence of legislation to the contrary." *Seigneur v. Nat'l Fitness Inst., Inc.,* 132 Md. App. 271, 752 A.2d 631, 637 (Md. Ct. Spec. App. 2000); *see also Nerenhausen v. Washco Mgmt. Corp.*, JKB-15-1313, 2017 WL 1398267, at *3 (D. Md. Apr. 18, 2017) ("Under Maryland law, in the absence of legislation to the contrary, a public policy in favor of freedom to contract generally supports the validity of exculpatory clauses."). "Such contractual clauses are supported by the public policy in favor of parties' freedom to contract." *College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.,* 132 Md. App. 158, 752 A.2d 265, 271 (Md. Ct.

Spec. App. 2000). Nevertheless, the courts have declined to enforce such clauses where (1) they purport to excuse intentional harm or harm caused by reckless, wanton, or gross negligence; (2) they are the result of "grossly unequal bargaining power"; and (3) the public interest is the subject of the transaction. *Wolf v. Ford,* 335 Md. 525, 644 A. 2d 522, 525–26 (Md. 1994). "This last category includes the performance of a public service obligation, e.g., public utilities, common carriers, innkeepers and public warehousemen ... [as well as] 'patently offensive' [transactions]" held invalid by "the common sense of the entire community." *Id.* at 526. The Maryland Court of Appeals has interpreted the 'public interest' exception narrowly. *See BJ's Wholesale Club, Inc. v. Rosen*, 435 Md. 714, 726, 80 A.3d 345, 352 (2013) (rejecting lower court's use of public interest exception as a 'catch-all' to reject exculpatory clause).

The Waiver Clause, set forth at Paragraph 8 of the Vendor Lease, provides that the tenant vendor:

A. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoters, other participants, operators, officials, any persons in any restricted area, sponsors, advertisers, owners and lessee of premises used to conduct the event and each of them, their officers and employees, all for the purposes herein referred to as releasees, from all liability to the undersigned, his personal representative, assigns, heir and next of kin for any and all loss or damage, and any claim or demands therefore on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasee or otherwise while the undersigned is in or upon the restricted area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event.

B. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted area or in any way competing officiating, observing, or working for,

or for any purpose participating in the event and whether caused by the negligence of the releasee or otherwise.

C. TENANT HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of the releasees or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for, or for any purpose participating in the event.

D. EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities could be dangerous and involve the risk of serious injury and or death and or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnify agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, not withstanding, continue in full legal force and effect. THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGN THE RELEASE AND WAIVER OF LIABILITY AND INDMNITY AGREEMENT, and further agrees that no oral representations, statement or inducements apart from the foregoing agreement have been made.

(Vendor Lease, ECF No. 20-4 at 4-5.)

On its face, as defendant asserts, the Waiver Clause would appear to preclude IRF's liability. However, the Waiver Clause in the Vendor Agreement is void as a matter of law on account of "legislation to the contrary" which is applicable to the Vendor Lease. *See Seigneur,* 132 Md. App. at 281, 752 A.2d at 637. Specifically, Section 8-105 of the Real Property Article of the Maryland Code provides that:

> "If the effect of any provision of a lease is to indemnify the landlord, hold the landlord harmless, or preclude or exonerate the landlord from any liability to the tenant, or to any other person, for any injury, loss, damage, or liability arising from any omission, fault, negligence, or other misconduct of the landlord **on or about the leased premises or any elevators, stairways, hallways, or other appurtenances used in connection with them, and not within the exclusive control of the tenant**, the provision is considered to be against public policy and void. An insurer may not claim a right of subrogation by reason of the invalidity of the provision."

Md. Code Ann., Real Prop. § 8-105 (emphasis added).[2]  *See also Nerenhausen*, 2017 WL 1398267, at \*3 (assessing the application of § 8-105 to tenant's claims, but concluding that the statute did not apply because tenant was in exclusive control of the area where the injury occurred).

In this case, there can be no question that the Vendor Lease constitutes a lease within the scope of the Maryland Real Property Article.  Indeed, the Vendor Lease is entitled a "lease," and expressly refers to IRF as "Landlord" and to Jaeger/Unicorn Strings as the "Tenant."  (ECF No. 20-4 at 3.)  *See* Md. Code Ann., Real Prop. § 1-101 (defining, "landlord," "tenant," and "lease").  The Vendor Lease further provides that in exchange for valuable consideration of $900.00, the Landlord permits the Tenant to occupy a portion of the Landlord's real property for a designated term.  (*Id.*)  With respect to the provisions of Section 8-105, it is undisputed that the location where plaintiff slipped and fell was an "appurtenance" to the leased premises "not within the exclusive control of the tenant."  Md. Code Ann., Real Prop. § 8-105.  "The 'leased premises' is the area where Plaintiff set-up and operated [the] Unicorn Strings [booth]."  (ECF No. 20-1 at ¶ 12.)  "The area where the occurrence took place was on a boardwalk, separate and apart from Plaintiff's booth."  (*Id.* at ¶ 13.)  In sum, the Vendor Lease falls within the statute, and the Waiver Clause contained therein—which seeks to "to indemnify the landlord, hold the landlord harmless, or preclude or exonerate the landlord from any liability to the tenant"—is "considered to be against public policy and void."  Md. Code Ann., Real Prop. § 8-105.  Accordingly, IRF may not avoid liability based on the Vendor Lease's Waiver Clause.

---

[2] This language is quoted directly in *Seigneur,* 132 Md. App. at 281, 752 A.2d at 637, n. 3.

**B. IRF Is Entitled to Summary Judgment on Plaintiff's Claims**

"In 'slip and fall' cases, the duty of care owed by an owner or occupier of a premises is a function of his legal relationship to the person entering on the premises. Specifically, in Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (i.e., a business invitee), a licensee by invitation (i.e., a social guest), a bare licensee, or a trespasser. The highest duty is owed to a business invitee, defined as 'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Rybas v. Riverview Hotel Corp.*, ELH-12-3103, 21 F. Supp. 3d 548, 560–61 (D. Md. 2014) (internal citations omitted). *See also Casper v. Chas. F. Smith & Son, Inc.,* 316 Md. 573, 578, 560 A.2d 1130, 1133 (1989). In this case, it is undisputed that plaintiff was an invitee on the premises, as his presence at the Festival was based on the Vendor Lease, a contract entered into as part of IRF's business. (ECF No. 20-1 at 2; ECF No. 25 at 5.)

"An owner or occupier of land only has a duty to exercise reasonable care to protect the invitee from injury caused by an unreasonable risk that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Rybas*, 21 F. Supp. 3d at 561 (internal citations omitted). *See also Tennant v. Shoppers Food Warehouse Md. Corp.,* 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997); *Pahanish v. Western Trails, Inc.,* 69 Md. App. 342, 355, 517 A.2d 1122, 1128 (1986). "Although the business invitor has a duty

to protect against unreasonably dangerous conditions, the business invitor is not an insurer of the invitee's safety. Like the owner, the invitee has a duty to exercise due care for his or her own safety. This includes the duty to look and see what is around the invitee. Accordingly, the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger." *Rybas*, 21 F. Supp. 3d at 561–62 (internal citations omitted).

"'[T]he burden is upon the [invitee] to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence' prior to the invitee's injury." *Maans v. Giant Of Maryland, L.L.C.*, 161 Md. App. 620, 627–28, 871 A.2d 627, 631 (2005) (quoting *Lexington Market Authority v. Zappala,* 233 Md. 444, 446, 197 A.2d 147, 148 (1964)). "The evidence must show not only that a dangerous condition existed, but also that the proprietor had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee." *Rehn v. Westfield Am.*, 153 Md. App. 586, 593, 837 A.2d 981, 984 (2003) (internal citation omitted).

### 1. IRF Did Not Have Actual or Constructive Knowledge of the Slippery Patch on the Boardwalk

IRF denies that it caused the slippery condition on the boardwalk and further denies that it had any knowledge of the slippery patch before plaintiff stepped on it and fell. (ECF No. 20-1 at ¶ 35-36.) Thus, IRF argues, it is entitled to summary judgment on plaintiff's claims because plaintiff is unable to present any evidence that defendant had actual or constructive knowledge of the slippery patch on the boardwalk which allegedly caused plaintiff to slip and fall. (*Id.* at 14-17.)

In opposition to IRF's Motion for Summary Judgment and in support of his negligence claims, Jaeger raises two arguments, both of which rely on the deposition testimony of IRF's agent Jules Smith. (ECF No. 21-1.) First, plaintiff asserts that because defendant "emplaced the dust-gravel mixture adjacent to the boardwalk," and because the slippery mud in which he fell included some of that dust-gravel mixture, defendant had actual knowledge of the dangerous condition on the boardwalk. (ECF No. 21 at 13-14.) Second, plaintiff asserts that defendant's failure to inspect the premises, as evidenced by defendant's lack of any inspection records, breached defendant's duty to inspect the premises for defects. (*Id.* at 13.)

Even viewing all evidence in the light most favorable to the non-moving party, plaintiff has failed to produce evidence that IRF had actual knowledge of the slippery patch which allegedly caused his fall. Plaintiff's assertion that defendant "emplaced the dust-gravel mixture adjacent to the boardwalk," and therefore has actual knowledge of the existence of that substance on the boardwalk does not prove the proposition which plaintiff intends: the fact that such material was placed *near* the boardwalk does not prove that it was placed *on* the boardwalk where plaintiff's injury occurred.[3] Nor is there any other evidence which would permit a conclusion that IRF had even constructive knowledge (for instance, through another person's notice/warning) of the allegedly dangerous condition. Thus, IRF is entitled to summary judgment on plaintiffs' claim premised on the theory that defendant failed to warn him of a known danger.

---

[3] Nowhere in his deposition does Mr. Smith state that the sand-gravel mixture was placed *on* the boardwalk, as plaintiff's argument suggests. *See* ECF No. 21-1, Smith Depo. at 24-27, 31-34.

**2. Even if IRF Breached Its Duty to Inspect the Premises, Plaintiff Is Unable to Show that IRF Would Have Discovered the Dangerous Condition in Time to Warn Plaintiff or Repair the Condition**

With respect to plaintiff's second theory of negligence based on IRF's duty to inspect the premises, plaintiff emphasis the fact that IRF did not keep any sort of inspection records. (ECF No. 21 at 13-14.) However, Maryland courts have held that a landowner is under no duty to keep records of property inspection activities. As the Maryland Court of Special Appeals explained in *Maans*, "[u]nder Maryland law, the owner/operator of a store has no duty to an invitee to keep records in order to lighten the invitee's burden of proving negligence." *Maans*, 161 Md. App. at 635, 871 A.2d at 636. Even though IRF may not have been under any duty to preserve records of its premises inspection activities, the adequacy of IRF's "inspect as you go program" remains unclear. *See* ECF No. 25 at 7. That is, whether IRF satisfied its "duty to inspect, and [its] duty to take reasonable precautions against foreseeable dangers" remains in dispute. *Rybas*, 21 F. Supp. 3d at 561.

Nevertheless, Maryland courts have held that even where a landowner breaches its duty to inspect the premises, a plaintiff must also prove that "had [the landowner] made such reasonable inspections, it would have discovered a dangerous condition." *Burkowske v. Church Hosp. Corp.*, 50 Md. App. 515, 523, 439 A.2d 40, 45 (1982). Indeed, the Maryland Court of Appeals has repeatedly explained that:

> "It may well be that a garage keeper should anticipate that oil or grease may occasionally leak from parked cars, but he is not an insurer and **we think it would be unreasonable to hold that it is his duty to continuously inspect and sand down any and all leakage as soon as it occurs, even if we assume that periodic inspections are necessary**."

*Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 270, 833 A.2d 17, 28 (2003) (emphasis added) (quoting *Zappala,* 233 Md. at 446, 197 A.2d at 148).

In this case, plaintiff's own description of the spot where he slipped undermines his allegation that defendant would have discovered the allegedly dangerous condition. When asked why he did not pay attention to any obstacles on the boardwalk when preparing to return to his booth from the bathroom, Jaeger responded:

> "I wouldn't say that I saw any obstacles. I was familiar with the boardwalk, and, when it was slick, I didn't walk on it. And when it was, I did – when it was dependable, I could walk on it. **So that day, it was fine, and the whole boardwalk was dependable to walk on and – except for that one spot. And the spot was innocuous in that it seemed like just a dirty spot.**"

(ECF No. 20-3 at 25, Jaeger Depo. 118:1-9) (emphasis added). Plaintiff later elaborated that the spot where he fell "was camouflaged as just a dirty board – set of boards, dirty area on the boardwalk." (*Id.* at 26, Jaeger Depo. 119:14-16.) Based on plaintiff's own description of the slippery patch as "innocuous" and "camouflaged," it cannot be said that IRF would have discovered the slippery patch through a reasonable inspection, much less so at a time when it could have warned or otherwise prevented plaintiff's injuries. Crucially, moreover, plaintiff does not identify any other evidence which would support his position that IRF would have discovered the slippery patch through a reasonable inspection. Accordingly, IRF is entitled to summary judgment on plaintiff's second negligence theory based on IRF's alleged failure to inspect the premises.

## CONCLUSION

For the reasons stated above, defendant International Renaissance Festivals, Ltd.'s Motion for Summary Judgment (ECF No. 20) is GRANTED, and summary judgment will be ENTERED in favor of IRF.

A separate Order follows.

Dated: May 12, 2017                                  _____/s/_____
                                                     Richard D. Bennett
                                                     United States District Judge